UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUENTIN LA GRANDE,

         Plaintiff,

   v.                 1:15-CV-275
                         (DNH/CFH)
BIMBO BAKERIES USA; BAKERY,
CONFECTIONARY, TOBACCO WORKERS &
GRAIN MILLERS INTERNATIONAL,
AFL-CIO LOCAL 53,

         Defendants.
_____

APPEARANCES:

QUENTIN LA GRANDE
Plaintiff Pro Se
276 Sheridan Avenue
Albany, New York 12210

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

# DECISION AND ORDER

    On December 8, 2014, plaintiff pro se Quentin La Grande filed a complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 200e, eq seq., at the Civil Rights Act of 1991. Dkt. No. 1 ("Compl.").[1] Plaintiff sought for permission to proceed in Forma Pauperius ("IFP"). Dkt. No. 4. Plaintiff was granted permission to proceed IFP, and his complaint was dismissed, without prejudice, for failure to state a claim and comply with pleading standards. Dkt. No. 7, 11. On April 27, 2015, plaintiff filed an amended complaint. Dkt. No. 12. Presently pending before

---

[1] For a more detailed review of the procedural history, reference is made to the prior Report-Recommendation and Order of the undersigned, dated March 17, 2015. See Dkt. No. 7.

this Court is a review of plaintiff's amended complaint.

I. **Background**

Following an initial review of the complaint, the undersigned granted plaintiff's IFP application and concluded that plaintiff's complaint was "wholly void of any factual background or explanation of the alleged discrimination on the basis of race or disability, retaliation, unequal terms and conditions of his employment, or his termination." Dkt. No. 7 at 4. Further, the Court observed that plaintiff failed to follow Federal Rules of Civil Procedure 8 and 10 because the complaint did "not set forth any factual allegations relating to his claims against defendant for discrimination." Id. at 5.

II. **Review of Amended Complaint**

In plaintiff's amended complaint, he argues that defendant discriminated against him because of his race. He alleges that: (1) defendant Bimbo Bakeries USA "retaliated against [him] for making a verbal complaint"; (2) defendants Bakery, Confectionary, Tobacco Workers and Grain Millers Union ("International Union") and Bakery, Confectionary, Tobacco Workers and Grain Millers Union, Local 53 ("Local Union"), failed to provide him with a collective bargaining agreement, union bylaws, and a copy of their constitution because of his race; (3) defendants International Union and Local Union "failed to file Grievance [on his] behalf regarding [his] termination . . . nor did they take the matter of [his] employment being terminated to Arbitration"; (4) defendants International Union and Local Union "provide[d] defendant Bimbo Bakeries

2

with false information about [plaintiff]. They told . . . Bimbo Bakeries lies; they stated that [plaintiff] was going to blow up the Bread Plant in Albany, New York"; (5) defendants John Dewitte, Melissa Patrick, and Eric Futchy "terminated [his] employment because of race"; (6) defendant Bimbo Bakeries failed to provide him with adequate training because of his race; and (7) defendants Bimbo Bakeries, International Union, and Local Union "discriminat[ed] against [him] because of [his] disability." Dkt. No. 12 at 1-2.

Plaintiff explains that he experienced a hostile work environment insofar as: (1) he was "subjected to racially derogatory language and unfair performance evaluations by . . . Product Manager John Dewitte"; (2) Dewitte and Shop Steward Thomas Bush "made racially harassing remarks towards [plaintiff] because [he is] African-American"; and (3) Bush and Bread Plant trainer David Philips denied him training and improperly trained and evaluated him because of his race and disability, instead "engag[ing] inapproiate [sic] conversations with [him] regarding [his] race . . . ."[2] Id. at 5. Plaintiff further alleges that the defendant Unions failed to file a grievance or arbitrate his termination because of his race and because he filed a complaint against Bush, the Local 53 Shop Steward. Id. He contends that defendant Phillips did not want him "to learn the Bread Bagger machine because of the simple fact that [he is] an African-American." Id. at 5-6. Further, Phillips "gave negative feedback to members of management on a daily basis(s) [sic] about [his] work performance when [he] told him

---

[2] Plaintiff contends that these conversations would include questions posed to him, such as, '[w]hy do black men date white women' and '[w]hy are so many black guys in jail for killing other black guys.'" Dkt. No. 12 at 6.

3

that [he] felt uncomfortable with him his [sic] conduct." Id. at 6. Plaintiff alleges that defendants Plant Manager Eric Futchey and Melissa Patrick "witnessed Mr. David Phillips['] harassment and didn't do anything to stop him," even after he "came to both Melissa Patrick and Plant Manager Eric Futchey['s] office[s]." Id.

Addressing defendant Dewitte's conduct, plaintiff alleges that Dewitte would, in his presence, make "complaints about 'Black Men using White Women for Sex and money.'" Dkt. No. 12 at 6. Further, Detwitte gave plaintiff a poor work evaluation "because of the fact that [he is] African-American." Id. Dewitte would "yell and shout at plaintiff on a daily basis, but not at White Production Workers." Id. Dewitte would ask plaintiff to "do a task, and then lie and say he didn't ash [him] to do the task that [he] successfully completed." Id. Dewitte would "use curse words like 'F*** YOU', 'YOU ARE F****** SLOW'[,] but didn't do this to white co-workers." Id. Because of plaintiff's race, Dewitte gave him a poor work evaluation, which lead to his termination. Id. Further, Dewitte provided white employees with copies of their evaluations, positive or negative, but refused to provide plaintiff with copies of his work evaluations. Id. at 6-7.

Plaintiff alleges that Bush would make racially- and sexually-explicit statements in front of him, even after plaintiff asked him to stop. Dkt. No. 12 at 6. Bush asked plaintiff whether he "has white in [him" because [his] . . . last name was La Grande, Bush ask[ed] [him] one time if [his] grandmother ever [sic] a white man because the last name La Grande [is] a white last name, not a last name for a N*****." Id. Bush and Dewitte told plaintiff that they "hope all N****** kill each other." Id.

Plaintiff alleges that Pat Rohan, Business Agent of the Local Union, failed to provide

4

him with copies of the collective bargaining agreement, Union bylaws, and the Union Constitution because of plaintiff's race and the fact that he made a verbal complaint about Bush. Dkt. No. 12 at 7. Rohan failed to file a grievance over plaintiff's unlawful termination because plaintiff is African-American. Id. Rohan "conspired with Michelle Shirron, Eric Futchey, Chris Lazette, and Art Montimy" to "provide the Albany Police Department with a false statement and lies about [plaintiff] stating that [plaintiff] was going to blow up the Bakery." Id. Plaintiff contends that these statements were "motivated because [he is] African American, and because of [his] disability; he suffer[s] [from] Anxiety." Id. at 7. Plaintiff contends that Rohan told him, in a telephone conversation and also in person, that he would "help" plaintiff, but did not, despite helping white employees. Id.

Plaintiff demands compensatory damages in the amount of $250,000 in lost earnings, benefits, "and other financial loss," and punitive damages in the amount of $150,000 for humiliation, embarrassment, emotional and physical distress, and mental anguish. Dkt. No. 12 at 7-9. Plaintiff further demands: (1) "[a] declaratory judgment that Defendant(s) Bimbo Bakeries USA, (International) and (Local 53) Bakery, Confectionary, Tobacco Workers and Grain Millers Union. [sic] Practices challenged herein are illegal and in violation of Section One of the Civil Right Act of 1866, as amended in 1991, 42 U.S.C. 1981"; (2) "A temporary and permanent injunction against both Bimbo Bakeries USA, and (International) and (Local 53) Bakery, Confectionary, Tobacco Workers and Grain Millers Union[,] its partners, officers, owners, agents, successors, employees, representatives and any and all persons acting in concert with it, from engaging in any further unlawful practices, policies, customs, and usages by Bimbo Bakeries USA  International) [sic] and

5

(Local 53) Bakery, Confectionary, Tobacco Workers and Grain Millers Union set forth herein"; (3) "[a]n Order requiring Bimbo Bakeries USA and International) [sic] and (Local 53) Bakery, Confectionary, Tobacco Workers and Grain Millers Union to initiate and implement programs that (i) remedy the racially hostile work environment; (ii) eliminate the continuing effects of the discriminatory and retaliatory practices described above"; (4) "An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described . . . above . . . which would provide for (i) the monitoring, reporting and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, (iii) a quarterly report setting forth information relevant to the effectiveness of the programs described . . . above"; (5) "nominal damages"; (6) "[a] Court Order compelling Bimbo Bakeries to Re-instatement of [his] employment with Bimbo Bakeries (employment re-assigned to the Cake Plant of Bimbo Bakeries with a set work schedule; which would be mutually agreed upon my [sic] Bimbo Bakeries and myself"; (7) "[a] Court Order compelling Bimbo Bakeries to pay [him] back pay from 10/31/2013 to the disposition of this Court matter. Re-statement [sic] of medical, dental, optical, and Life insurance benefits"; (8) "[a] Court Order compelling both the Unions . . . to re-instate [his] union membership, and to wave [sic] any back fees, etc."; and (8) "[a] Court order compelling both the Unions . . . to pay [him] $85,000 in monetary damages; which would be $170,000." Id. at 8-9.

The Court notes that plaintiff names several additional defendants in his amended complaint who were not named in the original complaint; yet, the caption of his amended complaint does not reflect the addition of these defendants. However, affording plaintiff

6

special solicitude, the Court concludes that plaintiff seeks to add the following individuals as defendants in this action: (1) Bimbo Bakeries Product Manager John Dewitte, (2) Shop Steward Thomas Bush, (3) Bimbo Bakeries Bread Plant Trainer/Bread Bagger Trainer David Phillips, (4) Local Union Business Agent Pat Rohan, (5) Shop Steward Jared Cummings, (6) Michelle Shirron, (7) Eric Futchey, (8) Chris Lazette, and (9) Art Montimy. See generally Dkt. No. 12.

Mindful of the requirement to liberally construe pro se pleadings, Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the amended complaint alleges enough to warrant a responsive pleading. In so ruling, the Court expresses no opinion as to whether plaintiff's claims can withstand a properly-filed motion to dismiss or for summary judgment.[3]

### III. **Conclusion**

Wherefore, it is hereby

**ORDERED** that the Amended Complaint (Dkt. No. 12) is accepted for filing as the operative pleading in this action; and it is further

**ORDERED** that the individual defendants, Bimbo Bakeries Product Manager John Dewitte, Shop Steward Thomas Bush, Bimbo Bakeries Bread Plant Trainer/Bread Bagger Trainer David Phillips, Local Union Business Agent Pat Rohan, Shop Steward Jared

---

[3] The Court recognizes that the amended complaint references a different action filed before this Court, LaGrande v. Key Bank N.A., 1:00-CV-1195, which was closed on September 30, 2005 after the Court granted defendants' motion for summary judgment. The Court notes that, to the extent that the amended complaint may be read as requesting any kind of relief relating to that action, any claim or request for relief in the closed Key Bank action cannot be addressed in this action.

Cummings, Michelle Shirron, Eric Futchey, Chris Lazette, and Art Montimy be added as defendants in this action; and it is further

**ORDERED** that the Clerk shall provide blank summonses and forward them to plaintiff, *who is to complete the summonses for each defendant and return them to the Clerk of the Court*; and it is further

**ORDERED** that upon receipt of the completed summonses from plaintiff, the Clerk is to issue the summonses, along with a copy of the amended complaint and a packet containing General Order 25, which sets forth the Civil Case Management Plan used by the Northern District of New York, to the United States Marshal for service upon the defendants; and it is further

**ORDERED**, that a formal response to the amended complaint be filed by the defendants or counsel as provided for in the Federal Rules of Civil Procedure subsequent to service of process on the defendants; and it is further

**ORDERED**, that the Clerk is directed to schedule a Rule 16 Conference before the assigned Magistrate Judge; and it is further

**ORDERED**, that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel.  **Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.**  Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;

and it is further

**ORDERED**, that all motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

Date: October 1, 2015
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge